IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00892-PAB-KLM

DONALD L. ETHERTON,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

## ORDER

    This matter comes before the Court on plaintiff's amended motion for reconsideration and clarification [Docket No. 46].

    Plaintiff was rear ended in a December 19, 2007 automobile accident. He thereafter filed claims for benefits with his insurer, defendant Owners Insurance Company. Plaintiff has asserted claims of statutory bad faith and breach of contract against defendant. In support of his claims, plaintiff endorsed Dr. Joseph Ramos, MD, to offer the expert opinion, among others, that the accident was the specific and exclusive cause of plaintiff's "lumbar disc protrusion, lumbar facet syndrome, lower extremity paresthesia, lumbar radiculopathy, [sacroiliac] joint dysfunction, myofacial hypertonicity and muscle spasm, insomnia, and myelopathy of the lower extremities." Docket No. 24 at 1. Defendant challenged that opinion pursuant to Fed. R. Evid. 702. The Court held a hearing on November 17, 2011, at the conclusion of which it ruled that Dr. Ramos could not offer his opinion regarding causation. *See* Docket No. 43 at 2. In

the present motion, plaintiff requests that the Court reconsider this ruling.

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, *see Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995), and, where, as here, a party files a motion for reconsideration prior to the entry of judgment, Rules 59(e) and 60(b) do not apply. *See Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir.1962). Instead, the motion falls within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g., Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1–2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the Duty-to-Defend Order); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to motion for reconsideration of interlocutory order). Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.

In the present matter, the Court determined Dr. Ramos to be qualified to give the

causation opinion at issue.  The Court then assessed the opinion for reliability.  *See*

*103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (quoting Fed.

R. Evid. 702); *see also* Fed. R. Evid. 702 (requiring that the testimony be "based on

sufficient facts or data," be the "product of reliable principles and methods," and reflect

a reliable application of "the principles and methods to the facts of the case").  In so

doing, the Court was required to "assess the reasoning and methodology underlying the

expert's opinion, and determine whether it is both scientifically valid and applicable to a

particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003)

(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)).[1]

Ultimately, the test requires that the expert "employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire Co.*, 526 U.S. at 152.  A plaintiff need only prove that "the witness has

sufficient expertise to choose and apply a methodology, that the methodology applied

was reliable, that sufficient facts and data as required by the methodology were used

and that the methodology was otherwise reliably applied."  *United States v. Crabbe*, 556

F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In its ruling, the Court described the three-step methodology employed by Dr.

Ramos to reach his causation opinion.  *See* Docket No. 48 (Tr. of 11/17/11 Hrg.) at 88-

---

[1]When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community."  *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).  These considerations are not exhaustive.  Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

89.  First, Dr. Ramos assessed whether the injuries about which plaintiff complained could be, as a general matter, caused by a low impact rear-end collision.  Dr. Ramos cited medical research supporting the conclusion that the injuries were a plausible consequence of such collisions.  Dr. Ramos then determined whether, in this specific case, there was a temporal relationship between the collision and the onset of the injuries and concluded that there was such a relationship.  Finally, Dr. Ramos analyzed whether a more likely cause of such injuries could be identified.  Dr. Ramos could find nothing in plaintiff's medical history or description of the events that would provide an alternative explanation for the injuries.  Nor was there anything in the medical literature that identified a likely alternative explanation in this case.

When assessing the methodology, the Court determined that it was "unrebutted that medical doctors use this particular practice" for "medical treatment purposes." Docket No. 48 at 90.  The Court further found that Dr. Ramos "did an excellent job in explaining what he did, why he did it, how he used it, and what he considered."  *Id.*  The Court, however, concluded that  Dr. Ramos, when assessing whether there were any alternative explanations for the injuries, relied upon "the fortuitous supply of information either through the patient or through other medical records that might introduce alternative explanations," and therefore that "the methodology . . . does not require the consideration of alternative explanations" or "provide a mechanism by which anyone can be reasonably sure that all alternative explanations are considered."  *Id.* at 91.

The Court agrees with plaintiff that the Court's conclusion requires revisiting. The Court's ruling turned on the assumption that the methodology that Dr. Ramos used did not exclude alternative causes or explanations and also that Dr. Ramos unjustifiably

extrapolated from an accepted premise to an unfounded conclusion.  Upon review of the hearing transcript, however, the Court finds that Dr. Ramos' methodology did adequately account for alternative causes.  He was familiar with medical literature that suggested velocity is not a reliable predictor of injury in rear-end vehicle collisions, which provided a reasoned basis for not conducting biomechanical force studies in this case.  *Cf. Hoffman v. Ford Motor Co.*, 2012 WL 3518997, at *10-11 (10th Cir. Aug. 16, 2012) (excluding opinion in part because expert failed to adequately account for his failure to use available data that was indisputably relevant to the methodology at issue).  Moreover, he testified that he did consider alternative causes for the injury as part of his methodology.  Because his specific causation methodology was reliable, Dr. Ramos did not improperly extrapolate his conclusion.

In sum, the Court believes that Dr. Ramos did not improperly attempt to support his specific and exclusive causation opinion solely on the basis of the general causation determination that low impact rear-end collisions can cause the relevant injuries.  *See* Docket No. 48 at 91-92 (where the Court previously ruled that, "[w]ithout a portion of the methodology devoted to the specifics of this collision and this injury and a portion of the methodology devoted to excluding on a rigorous basis other alternative causes in order to rule them out, the methodology . . . is analytically deficient for purposes of making an opinion as to specific causation and exclusive causation").  Rather, Dr. Ramos assessed general causation, considered the temporal proximity of the events in this particular case, and could not identify any likely alternative explanations.  The Court found that such methodology is accepted in the medical community for determining causation for medical treatment purposes.  There is no reason, on the present record,

to question its reliability for purposes of assessing causation for purposes of resolving the issues presented by this case.  Consequently, the Court finds that plaintiff has met his burden of establishing the admissibility of Dr. Ramos' expert opinion that the accident was the cause of plaintiff's "lumbar disc protrusion, lumbar facet syndrome, lower extremity paresthesia, lumbar radiculopathy, [sacroiliac] joint dysfunction, myofacial hypertonicity and muscle spasm, insomnia, and myelopathy of the lower extremities."  Docket No. 24 at 1; *see Hoffman*, 2012 WL 3518997, at *8 (stating that it is the proponent of the evidence who bears the "burden to show reliability and relevancy") (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)).

For the foregoing reasons, it is

**ORDERED** that plaintiff's amended motion for reconsideration and clarification [Docket No. 46] is GRANTED in part and DENIED as moot in part.  It is further

**ORDERED** that, pursuant to Fed. R. Evid. 702, the Court will not preclude Dr. Joseph Ramos from offering his opinion regarding the cause of plaintiff's injuries.  It is further

**ORDERED** that, in light of the foregoing, plaintiff's request for clarification regarding the extent to which Dr. Ramos's testimony had been excluded is now moot. It is further

**ORDERED** that plaintiff's motion for forthwith ruling on his motion for reconsideration and clarification [Docket No. 62] is DENIED as moot.

DATED September 13, 2012.

                                    BY THE COURT:

                                    s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    United States District Judge