IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00892-PAB-KLM

DONALD L. ETHERTON,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on defendant Owners Insurance Company's Motion in Limine Regarding Expert Testimony of Richard Kaudy, Esq. [Docket No. 75] and Motion in Limine [Docket No. 76]. Plaintiff did not file written responses to these motions but did respond orally at the December 28, 2012 trial preparation conference.

**I. BACKGROUND**

On December 19, 2007, plaintiff Donald L. Etherton was involved in a collision with another driver. Docket No. 70 at 4, ¶ 1. At the time of the accident, the other driver was insured under a policy with a bodily injury liability limit of $250,000 per person. *Id*. at ¶ 2. Plaintiff was insured by defendant under a policy providing underinsured motorist ("UIM") coverage up to a limit of $1,000,000. *Id*. at ¶ 3. Plaintiff settled his claim with the other driver for $250,000 (the policy limit of that person's coverage) and then submitted a claim to defendant for UIM benefits to cover the remainder of his damages. Docket No. 70 at 2, 3, 4, ¶ 4.

On April 21, 2010, plaintiff brought this case against defendant, alleging in part that defendant breached the insurance contract by failing to objectively investigate or evaluate plaintiff's claim and that defendant violated Colorado law by unreasonably delaying or denying payment of UIM benefits. Docket No. 70 at 2; *see* Colo. Rev. Stat. § 10-3-1115.

## II. STANDARD OF REVIEW

The purpose of a motion in limine is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2nd Cir. 1996)) (further citations omitted). Pretrial rulings often may save time at trial, as well as save the parties time, effort, and cost in preparing their cases. *Cline*, 188 F. Supp. 2d at 1291. The Court recognizes that in many cases, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) (though in limine rulings can save time, cost, effort and preparation, court is usually better situated during trial to assess evidence). However, the "[d]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citation omitted). Moreover, a ruling in limine does not "relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of

proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir. 1987) (internal quotation omitted).

## III. DISCUSSION

### A. Expert Testimony on Ultimate Issues

Defendant argues that the Court should exclude testimony by one of plaintiff's expert witnesses, Richard Kaudy, that "impermissibly embrace[s] ultimate legal issues." Docket No. 75 at 3.

Under Federal Rule of Evidence 702, an individual may testify as an expert if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." An expert's opinion is not "objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). The Tenth Circuit has held that an expert witness may testify regarding an ultimate issue of fact but may not offer an opinion that "articulates the ultimate principles of law governing the deliberations of the jury." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). An expert witness may, however, refer to the law so long as she does not "state legal conclusions drawn by applying the law to the facts." *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991).

The rationale for excluding testimony on ultimate legal issues is that legal conclusions do not "assist[] the jury's understanding and weighing of the evidence," but

rather "direct a verdict," creating a risk of both confusion and prejudice. *Specht*, 853 F.2d at 808-09; *see also Wollan v. U.S. Dep't of Interior*, 997 F. Supp. 1397, 1403 (D. Colo. 1998) ("Where the ultimate issue is a question of law, the opinion of a legal expert, even a lawyer, interferes with the judge's role as 'sole arbiter of the law' and should not be allowed.") (citing *Specht*, 853 F.2d at 807-810). This rule particularly applies to "an attorney who states his belief of what law should govern the case." *Specht*, 853 F.2d at 808; *see also Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 742 (10th Cir. 1993) (stating that a critical factor in *Specht* was that the witness was an attorney seeking to testify about constitutional law).

In *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1107 (Colo. App. 1990), the court held that it was not error, under Colorado Rule of Evidence 702, to permit two attorneys to testify as expert witnesses regarding the "standard of good faith conduct of an insurer," noting that "[e]xperts routinely testify as to whether a defendant's conduct violated the accepted standards of practice of the legal, medical, dental and engineering professions." It held that the attorneys' years of experience dealing with insurance companies regarding worker's compensation claims constituted an "adequate foundation to demonstrate the expert witnesses' familiarity with and knowledge of insurance industry standards in meeting the companies' responsibilities to injured workers." *Id*. at 1106. The court further held that the attorneys could articulate a reasonableness standard drawn from case law and apply it to a defendant insurance company's conduct. *Id*. at 1107. The court reasoned that this testimony was not prejudicial or confusing because the witnesses applied the same standard stated in the

jury instructions and because the judge reminded the jury during the expert's testimony to apply only the legal rules announced by the judge. *Id.*

### 1. Mr. Kaudy's Opinion Regarding Defendant's Grant of Consent to Settle

Defendant objects to the admission of three opinions that Mr. Kaudy offers in his expert report on the grounds that they contain legal conclusions and are not based on sufficient facts or on the reliable application of reliable principles. Docket No. 75 at 7; *see* Fed. R. Evid. 702.

First, defendant challenges Mr. Kaudy's opinion that defendant unreasonably delayed granting consent for plaintiff to settle with the other driver. Docket No. 75 at 7; Docket No. 75-1 at 2, 5. Mr. Kaudy asserts that "[r]easonable insurers do not delay providing consent." Docket No. 75-1 at 2. He further asserts that the alleged delay was "intentional, deliberate, and performed with a feeling evincing a willful and wanton disregard for the rights and feelings of the insured." Docket No. 75-1 at 5. These statements contain legal conclusions (that defendant's conduct was unreasonable and that defendant acted willfully and wantonly) that would impermissibly usurp the role of the judge in stating the law and the role of the jury in applying the law to the facts. *See Specht*, 853 F.2d at 808-09; *Evans*, 936 F.2d at 476. Moreover, when asked at his deposition to cite the authority that requires an insurance company to give consent to settle within a particular period of time, Mr. Kaudy stated that he was unaware of any such authority and that "[i]t all depends on the facts of each particular claim and case." Docket No. 75-1 at 28, Kaudy dep. 64 ll. 20-21. This opinion is thus distinguishable from those at issue in *Southerland*, in which the attorneys derived their opinions by

applying the same legal standard announced by the court. See 794 P.2d at 1107. In contrast, Mr. Kaudy fails to articulate any discernible standard, rendering this testimony inadmissible under Rule 702, as well as Rule 704. Fed. R. Evid. 702(b)-(d) (stating that expert testimony must be based on sufficient facts or data and must result from the reliable application of reliable methods).

Second, defendant challenges Mr. Kaudy's opinion that defendant "was legally or contractually obligated to advance the amount of the underlying settlement while it evaluated the case." Docket No. 75 at 8; Docket No. 75-1 at 2 ("Reasonable insurers, accordingly, either advance to their insured the amount tendered by the tortfeasor's liability insurer or else expedite the asset search to avoid harming the insured"). Mr. Kaudy was unable to substantiate this assertion. At his deposition, the only support he cited for the proposition that defendant violated industry standards by failing to advance funds pending the grant of its consent to settle was that he was aware of another insurance company that did advance such funds. Docket No. 75-1 at 28-29, Kaudy dep. 64 l.22-65 l.7. He could not, however, recall whether the other insurer had any written guidelines regarding this practice. Id. at 65-66. This opinion is thus inadmissible for the same reasons cited above: it offers a legal conclusion untethered to a cognizable legal standard. See Fed. R. Evid. 702(b)-(d); Specht, 853 F.2d at 808-09; Southerland, 794 P.2d at 1107.

Finally, defendant challenges Mr. Kaudy's opinion that defendant delayed its grant of consent in bad faith. Docket No. 75 at 9; Docket No. 75-1 at 2 (defendant's "behavior violates the implied covenant of good faith and fair dealing while elevating concern for the insurer's money over any funds of the insured."). Defendant argues

6

both that this is an impermissible legal conclusion and that it is not relevant because plaintiff has not asserted a common law claim for breach of the covenant of good faith and fair dealing. Docket No. 75 at 9. The Court agrees that this is an impermissible legal conclusion that, like the other excluded opinions, is not based on an articulable legal standard. See Docket No. 75-1 at 28-29, Kaudy dep. 62-67.

However, evidence of bad faith is not irrelevant to plaintiff's claim under Colo. Rev. Stat. § 10-3-1115. Although § 10-3-1115 "create[s] a new private right of action for insureds in addition to and different from a common law bad faith claim," the "burden of proving that statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing." *Kisselman v. Am. Family Mut. Ins. Co.*, --- P.3d ----, 2011 WL 6091708, at *12 (Colo. App. Dec. 8, 2011); *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012). The common law standard requires a plaintiff to show that "the insurer knew or recklessly disregarded the fact that its conduct was unreasonable," while a statutory claim "requires only that a first-party claim be denied without a reasonable basis." *Vaccaro*, 275 P.3d at 756. Thus, evidence of bad faith that shows that an insurer acted unreasonably would also support a statutory claim.

In sum, the three challenged opinions are inadmissible.

### 2. Opinion Regarding Alleged Violation of Unfair Settlement Claims Practices Act

Defendant argues that the Court should exclude Mr. Kaudy's testimony that defendant violated the Colorado Unfair Claims Settlement Practices Act ("UCSPA"). Docket No. 75 at 9-11; Docket No. 75-1 at 3.

> Mr. Kaudy's report states:
>
> Before the insured filed suit to obtain the benefits, the insured was entitled to learn the claim decision based on the law, facts of the accident and insurance policy language, according to the UCSPA. . . . Insureds qualify for three categories of damages that the insurer agrees to pay based on the contract. These consist of damages for physical impairment, disfigurement, scarring, economic and non-economic losses. When the insured asked the insurer for specifics on the claim decision that the losses total $150,000, the insurer refused to break down how much of the $150,000 was allocated to what damage. . . . [P]art of [the duty of good faith and fair dealing] requires informing the insured of why the claim was being delayed or denied, C.R.S. § 10-3-1104(1)(h)(XIV).

Docket No. 75-1 at 3. Defendant argues that this is an impermissible legal conclusion and that it is not relevant to plaintiff's statutory claim. Docket No. 75 at 11.

Defendant's argument regarding relevance is based on the differences between Colo. Rev. Stat. § 10-3-1115 and a common law claim. The common law tort of bad faith breach of an insurance contract, which is codified at Colo. Rev. Stat. § 10-3-1113, provides that willful violations of the UCSPA are relevant to "determining whether an insurer's delay or denial was reasonable." Colo. Rev. Stat. § 10-3-1113(4). Section 10-3-1115 does not contain a similar provision, instead stating "[n]otwithstanding section 10-3-1113(3), for the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). However, § 10-3-1113(3) pertains to the knowledge and recklessness of the defendant, not to its violation of the UCSPA. Section 10-3-1115 disclaims only the intent requirement, and not the definition of reasonableness, under a common law claim. *See State Farm Mut. Auto. Ins. Co. v. Fisher*, 08-cv-01687-REB-MEH, 2009 WL 2766763, at *7 (D. Colo. Aug. 27, 2009)

(applying the same standard of unreasonableness to common law and statutory insurance claims but noting that a common law claim also requires a showing of knowledge of recklessness on the part of the insurer); Erin Robson Kristofco, *CRS §§ 10-3-1115 and -1116: Providing Remedies to First-Party Claimants*, 39 COLO. LAW. 69, 71 (July 2010) ("the insured's burden [under § 10-3-1115] remains the same as bad faith with regard to proving that the delay or denial was unreasonable"). As the standard for reasonableness is the same under both a common law and statutory claim, defendant's alleged violation of the UCSPA is relevant to plaintiff's claim.

Moreover, Mr. Kaudy provides a legal basis for his opinion on this matter, namely the statutory provisions discussed above. *See* Docket No. 75-1 at 3. He alleges that plaintiff asked for a breakdown of the $150,000 settlement offer, defendant refused and asserts that this refusal violated the requirement that an insurer "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Colo. Rev. Stat. § 10-3-1104(1)(h)(XIV). This testimony is admissible under *Southerland*, as the opinion of an "expert applying the legal or industry standard to the facts in determining if a defendant's conduct was violative of the standards of a profession or industry." 794 P.2d at 1107.

Thus, Mr. Kaudy's testimony regarding the UCSPA is admissible.

### B. Evidence of Post-Filing Conduct

Defendant argues that plaintiff should be precluded from presenting evidence of defendant's conduct subsequent to plaintiff's filing this lawsuit. Docket No. 75 at 12-15;

Docket No. 76 at 3-5.  At the trial preparation conference, plaintiff's attorney asserted that, in order to show that defendant's initial investigation of his claim was unreasonable, it is necessary to contrast defendant's investigation before and after plaintiff filed suit.

### *1. Mr. Kaudy's Statements*

Defendant argues that the Court should exclude Mr. Kaudy's statements regarding defendant's litigation strategy.  Docket No. 75 at 13-15.

Under Colorado law, "the tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative."  *Dale v. Guaranty Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997).  However, evidence of a defendant insurance company's litigation conduct is admissible only if "the risks of unfair prejudice, confusion of the issues, or misleading the jury, and considerations of undue delay, waste of time, or the presentation of unnecessary cumulative evidence are substantially outweighed by the probative value of the evidence."  *Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 818 (Colo. App. 2006).  Admitting a defendant insurer's litigation strategy as evidence of its bad faith "could create potential conflicts with the attorney's litigation privilege," "result in ethical dilemmas for attorneys representing insurance companies," or "involve attempts to obtain or introduce information protected by the attorney-client and work-product privileges."  *Id*. at 817.  It could also deter insurers "from conducting a vigorous defense."  *Id*. at 819.

Defendant argues that the Court should exclude Mr. Kaudy's statements that "insureds are not expected to see their premium dollars diverted into financing a legal

odyssey funding lawyers and experts devoted to discrediting the claim" and that "UIM insurers may not pervert the insurance process by diverting policyholder premiums to fund efforts so they become surrogate defense counsel for the careless driver who caused the innocent insured losses in the first place." Docket No. 75 at 13; Docket No. 75-1 at 3, 8. Defendant argues that the Court should also exclude Mr. Kaudy's criticism of its expert witnesses, namely, his statements that "the insurer uses the retained witnesses as an opportunity to sew doubt, with doubt as their product, into the validity of the medical providers and insured" and that "the insurer . . . hired opinion experts who historically, based on their deposition testimony, cater to the insurance industry that resists paying benefits to injured insureds." Docket No. 75 at 14; Docket No. 75-1 at 6. It also objects to his description of an expert witness' methodology as "junk science." Docket No. 75 at 14; Docket No. 75-1 at 6, 8.

Mr. Kaudy's statements regarding an insurer's ability to assert its interests with respect to a UIM claim are inadmissible under *Specht*, as discussed above in section III.A.1. *See* 853 F.2d at 808-09. In addition, they contradict prevailing Colorado law under which an insurer challenging a claim for UIM coverage may find itself in a quasi-adversarial position with respect to its insured. *See State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 188 (Colo. 2004) ("the insurer becomes almost adversary to its own insured in the context of uninsured motorist coverage") (citing *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 494 (Colo. 1998)); *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) ("This duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including

through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith."). Thus, these statements are not admissible.

Mr. Kaudy's statements regarding defendant's experts, at least those specifically identified in defendant's motion in limine regarding Mr. Kaudy, are inadmissible because admitting testimony regarding litigation strategy as evidence of bad faith risks creating "ethical dilemmas for attorneys representing insurance companies" or "conflicts with the attorney's litigation privilege." *See Parsons*, 165 P.3d at 817. Furthermore, insurers might be "deterred from conducting a vigorous defense" if their selection of experts could be used as "evidence of pre-existing bad faith." *Id*. at 819.

Thus, Mr. Kaudy's statements regarding defendant's post-filing conduct, as identified in defendant's motion in limine, are inadmissible.

### *2. Settlement Offer*

Under Federal Rule of Evidence 408, evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim" is not admissible to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a)(1). Such evidence may be admissible for other purposes, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id*. at 408(b); *see also Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1362-66 (10th Cir. 1987) (affirming trial court's decision to admit evidence of previous incidents in which defendant settled similar cases because they had probative value and did not contain inflammatory

material and defendant had an opportunity at trial to distinguish them). However, "when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers." *Bradbury*, 815 F.2d at 1364.

The court in *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1258 (D. Colo. 2003), held that a defendant insurer's settlement offer was inadmissible as evidence that it acted in bad faith. The court stated that "Plaintiff's supplemental complaint seems to be premised on the belief that Defendants' settlement offers were unreasonably low and, therefore, presumptively evidence of bad faith." *Id*. The court rejected this inference, noting that "settlement strategies are more the product of art than science, and fraught with the potential for mis-perception by all parties." *Id*. It cautioned that "[i]f an insurance company risks a bad faith claim for failing to make a settlement offer deemed acceptable by the insured, then the price of peace becomes total capitulation," which would discourage settlement negotiations altogether. *Id*. at 1259. It also cited the risk of jury confusion and the likelihood that parties would feel compelled to avoid such confusion by offering testimony regarding their settlement strategies, including testimony from counsel. *Id*. at 1259 (citing *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542 (10th Cir. 1991) ("[t]he risks of prejudice and confusion entailed in receiving settlement evidence are such that often . . . the underlying policy of Rule 408 require[s] exclusion even when a permissible purpose can be discerned.") (internal citation omitted)); *see also Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223-24 (10th Cir. 2000) ("We are also unwilling to infer that settlement authority invariably constitutes a final, objective assessment of a claim's

worth to which an insurer may be held on penalty of bad faith.") (internal citation and quotation marks omitted).

Here, plaintiff seeks to introduce defendant's settlement offer as evidence of defendant's investigation and its view of the claim. At the trial preparation conference, plaintiff's attorney argued that this evidence falls within the exception to Rule 408 because it is not being offered to show defendant's liability for, or the validity of, the claim, but rather to show that defendant's investigation was lacking. See Fed. R. Evid. 408(b). This case is analogous to Southwest Nurseries insofar as plaintiff is seeking to introduce the amount defendant offered in settlement as evidence of its insufficient investigation. See 266 F. Supp. 2d at 1258. The risk that this evidence will both confuse the jury and undermine the policy in favor of settlement substantially outweighs its probative value, which is already diminished by the inherent complexity of settlement offers and negotiations. See id. at 1258-59; see Fed. R. Evid. 403, 408.

Evidence of defendant's settlement offer is thus inadmissible as evidence that its investigation was insufficient.

### C. Evidence of Alleged Damages

Defendant argues that the Court should exclude evidence of plaintiff's non-economic damages resulting from defendant's handling of plaintiff's insurance claim on the ground that plaintiff's causes of action do not permit him to recover these damages.[1] At the trial preparation conference, plaintiff stated that he is only seeking to

---

[1] Defendant points out that plaintiff's claims, for breach of contract and violation of Colorado law, permit him to recover only economic damages flowing from the breach of contract, two times the covered benefit, reasonable attorney's fees, and costs. See Colo. Rev. Stat. § 10-3-1116(1) ("A first party claimant . . . whose claim for payment of

14

introduce evidence of the non-economic harm he sustained as a result of the accident and not as a result of defendant's handling of his claim. There is no dispute that evidence of non-economic harm caused by the accident is relevant to calculating compensatory damages that defendant owed plaintiff under the insurance policy. *See* Docket No. 76 at 6 ("Plaintiff's recoverable damages relate only to the damages he sustained in the December 19, 2007 collision"). Thus, plaintiff's clarification has mooted defendant's argument.

### D.  Inflammatory Correspondence

Defendant moves to exclude under Federal Rule of Evidence 403 letters that plaintiff's attorney, Chad Hemmat, sent to defendant on the ground that they contain "exceedingly inflammatory language, misstatements of fact, and erroneous recitations of law." Docket No. 76 at 7. Plaintiff argued at the trial preparation conference that this correspondence is necessary to plaintiff's case because, in its absence, the jury will assume that he made no effort to negotiate before filing suit. Both parties agreed that, if the Court finds that certain statements should be excluded, redacting the letters would be an acceptable remedy as opposed to exclusion.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 403 permits courts to exclude

---

benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."); *see also Grynberg v. Agri Tech., Inc.*, 10 P.3d 1267, 1271 (Colo. 2000) (economic loss rule barred tort recovery where plaintiffs alleged only breach of contractual duties).

relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendant challenges the following statement in Mr. Hemmat's March 3, 2010 letter:

> I am desperately trying to understand your position with respect to this case. . . . Your company calls itself in its advertising the "no problem people". . . . Does your company call itself the "no problem people" because you intend to take premiums forever, pay nothing when it comes time to pay on a claim, and you have no problem with that?

Docket No. 76 at 7; Docket No. 76-1 at 6-7. Defendant also objects to the following passage in Mr. Hemmat's August 26, 2009 letter:

> I want to remind you once again that when you look at your own letter, it quite clearly identifies Don Etherton under the "Our Insured" line. This man is not your enemy. I want to remind you that Mr. Etherton is in dire financial straits and is in danger of losing his home due to the economic repercussions of his injuries. Your letter suggests a deep-seated dislike and suspicion about this gentleman. . . . Unfortunately, I cannot respond to your unsubstantiated and paranoid suspicions.

Docket No. 76 at 8; Docket No. 76-1 at 9.

In this case, plaintiff is asserting two claims: that defendant breached its insurance contract by failing to objectively investigate plaintiff's claim and that defendant violated Colorado law by unreasonably delaying or denying plaintiff benefits. Docket No. 70 at 2; *see* Colo. Rev. Stat. §§ 10-3-1115, 10-3-1116. The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and resulting damages. *Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011). To bring a claim under § 10-3-1115, a plaintiff must

show that an insurer unreasonably delayed or denied payment of a claim for benefits owed to or on behalf of a first-party claimant. Colo. Rev. Stat. § 10-3-1115(1)(a).

The language in Mr. Hemmat's letters that defendant seeks to exclude is not relevant as it does not tend to make the facts consequential to plaintiff's claims more probable. *See* Fed. R. Evid. 403. Mr. Hemmat's statements do not logically establish the existence of a contract, plaintiff's performance, the breach of that contract, resulting damages, or defendant's unreasonable delay or denial of plaintiff's UIM claim. Given that such correspondence is frequently introduced as evidence during trials over coverage disputes, as plaintiff admitted during the hearing, such language appears to have been interjected for rhetorical purposes. The Court holds inadmissible the language in Mr. Hemmat's letters that defendant has challenged and directs plaintiff to redact such letters accordingly.

### E. Prior Misdemeanor Traffic Offense

Defendant argues that the Court should prohibit plaintiff from impeaching one of its expert witnesses, Dr. Neil Pitzer, with evidence of a driving offense committed in 2007 on the grounds that it is impermissible character evidence and the risk of prejudice outweighs its probative value. Docket No. 76 at 8; *see* Fed. R. Evid. 403, 404. At the trial preparation conference, plaintiff stated that he intends to impeach Dr. Pitzer with evidence that he lied about a driving while ability impaired conviction at depositions in other cases and in connection with the renewal of his medical license. Plaintiff claims that such evidence is relevant to Dr. Pitzer's credibility.

Federal Rule of Evidence 608(b) bars extrinsic evidence to "prove specific instances of a witness's conduct in order to attack or support the witness's character for

truthfulness." A court may, however, allow an attorney to inquire into such instances on cross-examination so long as the specific conduct is "probative of the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608(b)(1). Admissibility of intrinsic evidence of specific conduct is subject to the court's discretion under Rule 403. *See United States v. Torres*, 569 F.3d 1277, 1283 (10th Cir. 2009) (decision to admit evidence under Rule 608(b) is at the discretion of the district court); *United States v. Girdner*, 773 F.2d 257, 261 (10th Cir. 1985) ("The court did not abuse its discretion in allowing cross-examination of appellant's previous falsehoods and deceitful actions in the ballot fraud scheme as being probative of appellant's truthfulness.").

Under Rule 608(b), plaintiff may not introduce extrinsic evidence of Dr. Pitzer's offense or his subsequent statements about it. *See* Fed. R. Evid. 608(b). But neither Rule 403 nor Rule 608(b) bars plaintiff from cross-examining Dr. Pitzer about whether he has previously concealed or made false statements about the offense. *See Torres*, 569 F.3d at 1282-83.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion in Limine Regarding Expert Testimony of Richard Kaudy, Esq. [Docket No. 75] is GRANTED with respect to Mr. Kaudy's opinions that defendant unreasonably delayed granting consent to settle, was obligated to advance payment during that time, and breached its duty of good faith and fair dealing. It is further

**ORDERED** that Defendant's Motion in Limine Regarding Expert Testimony of

Richard Kaudy, Esq. [Docket No. 75] is DENIED with respect to Mr. Kaudy's opinion that defendant violated the Unfair Claims Settlement Practices Act.  It is further

**ORDERED** that Defendant's Motion in Limine [Docket No. 76] is GRANTED with respect to defendant's post-filing conduct, settlement negotiations, and the challenged portions of Mr. Hemmat's correspondence.  It is further

**ORDERED** that Defendant's Motion in Limine [Docket No. 76] is DENIED with respect to evidence of non-economic damages and impeachment of Dr. Pitzer regarding a misdemeanor traffic offense.


DATED January 7, 2013.

                              BY THE COURT:

                              s/Philip A. Brimmer
                              PHILIP A. BRIMMER
                              United States District Judge